UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY CONCRETE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROAD AND HIGHWAY BUILDERS, LLC, <br><br> Defendant. | No. 1:16-cv-01374-DAD-MSJ <br><br> ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> (Doc. No. 15) |

This matter came before the court on June 6, 2017, for hearing on the defendant's motion for partial summary judgment. (Doc. No. 15.) Attorney Cory Chartrand appeared on behalf of plaintiff and counter-defendant Central Valley Concrete, Inc., and attorney J. Petrie appeared on behalf of defendant Road and Highway Builders, LLC. The court has considered the briefing submitted by the parties as well as their oral arguments. For the reasons explained below, defendant's motion for partial summary judgment will be denied.

### FACTUAL BACKGROUND

The following facts are undisputed on summary judgment. Defendant Road and Highway Builders, LLC ("RHB") is a heavy engineering contractor based in Nevada that specializes in highway design, construction, and maintenance. (Doc. No. 15-1 at 2.) Plaintiff Central Valley Concrete, Inc. ("CV") is a trucking contractor based in California. (Doc. Nos. 15-1 at 2; 16 at 1.)

1

In 2014, defendant RHB was the successful bidder on a Federal Highway Administration ("FHA") project to rehabilitate a portion of U.S. Highway 120 in Yosemite National Park, located in Mariposa and Tuolumne Counties of California. (Doc. Nos. 15-1 at 2; 16-3 at 2, ¶ 1.) The FHA name for the project was "Tioga Pass Road." (*Id.*)

As part of the construction, defendant required aggregate and paving materials to be moved to a job site on Highway 120. (Doc. Nos. 15-1 at 2; 16 at 3–4.) Defendant solicited bids from trucking contractors for this portion of the project. (*Id.*) In response, plaintiff submitted a quotation to defendant, which was accepted and signed by both parties. (*Id.*) Defendant subsequently issued a purchase order in March 2015 that included the quantities of aggregate and paving materials for the project and the terms and conditions by which the parties would be bound. (Doc. Nos. 15-1 at 2; 16-3 at 4, ¶ 2.) The purchase order was signed by representatives from both plaintiff and defendant's companies. (*Id.*)

The Tioga Pass Road project ultimately required 43,072.01 tons of material to be transported to the job site. (Doc. No. 16-3 at 3, ¶ 5.) However, between March 12, 2015, and August 12, 2015, plaintiff hauled only 35,342.5 tons of material to the site. (*Id.* at 3, ¶ 6.)

In mid-2015, defendant began contracting with other hauling companies to move material that plaintiff had not yet transported.[1] (Doc. Nos. 15-1 at 3; 16 at 5.)

On August 16, 2016, plaintiff CV initiated this action in Merced County Superior Court against defendant RHB and Does 1–10, alleging that defendant failed to pay it an outstanding balance of $130,687.19 which was due and owing. (Doc. No. 1 at 5, ¶¶ 1–2.) In that action, plaintiff asserted five causes of action under California state law: (i) breach of written contract; (ii) breach of oral contract; (iii) account stated; (iv) common counts—work, labor, services; and (v) quantum meruit. (*Id.* at 6–8.) On September 15, 2016, defendant removed the entire action from state court to this federal court on grounds of diversity jurisdiction. (*Id.* at 2.) On the following day, defendant filed an answer and counterclaim against plaintiff, alleging a single

---

[1] Defendant asserts in its motion for summary judgment that GCU Trucking brought in 1,679.28 tons between May 26, 2015, and June 8, 2015, and Dan Palmer Trucking moved the remaining 6,050.23 tons between May 1, 2015 and May 29, 2015. (Doc. No 15-1 at 3.)

1  claim for breach of contract.  (Doc. Nos. 3–4.)

2  On April 25, 2017, defendant filed the instant motion for partial summary judgment as to

3  the breach of contract claim asserted in its counterclaim.  (Doc. No. 15.)  Plaintiff filed its

4  opposition to that motion on May 23, 2017.  (Doc. No. 16.)  Defendant filed its reply on May 30,

5  2017.  (Doc. No. 17.)

## LEGAL STANDARD

7  Summary judgment is appropriate when the moving party "shows that there is no genuine

8  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

9  Civ. P. 56(a).  In a motion for summary judgment, the moving party "initially bears the burden of

10  proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Securities Litigation*,

11  627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

12  The moving party may meet its burden by "citing to particular parts of materials in the record,

13  including depositions, documents, electronically stored information, affidavits or declarations,

14  stipulations (including those made for purposes of the motion only), admissions, interrogatory

15  answers, or other materials" or by showing that such materials "do not establish the absence or

16  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

17  support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

18  If the moving party would bear the burden of proof on an issue at trial, that party must

19  "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

20  party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In such a

21  circumstance, summary judgment should be granted, "so long as whatever is before the district

22  court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id.* at 323.

23  When the non-moving party bears the burden of proof at trial, however, "the moving party need

24  only prove that there is an absence of evidence to support the nonmoving party's case."  *Oracle*

25  *Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

26  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

27  against a party who fails to make a showing sufficient to establish the existence of an element

28  essential to that party's case, and on which that party will bear the burden of proof at trial.  *See*

*Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its burden, the burden then shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).

When evaluating the evidence to determine whether there is a genuine issue of fact, the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."  *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

1 party "must do more than simply show that there is some metaphysical doubt as to the material
2 facts." *Matsushita*, 475 U.S. at 587.  Where the record taken as a whole could not lead a rational
3 trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

## ANALYSIS

Here, as noted, defendant RHB moves for summary judgment in its favor as to its breach of contract counterclaim against plaintiff.  (Doc. No. 15-1.)

In considering defendant's breach of contract claim, the court must look to the substantive law of California.  *See Erie Railway Co. v. Tompkins*, 304 U.S. 64 (1938); *see also In re County of Orange*, 784 F.3d 520, 523, 530 (9th Cir. 2015).  In California, the elements of a cause of action for breach of contract are:  (i) existence of the contract, (ii) performance or excuse for nonperformance by the party asserting the violation, (iii) breach, and (iv) resulting damages.  *See Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 Fed. Appx. 661, 662 (9th Cir. 2009)[2] (citing *First Comm. Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)); *Oasis West Realty, LLC v. Goldman*, 51 Cal. App. 4th 811, 821 (2011).

To show breach, a plaintiff must demonstrate that the defendant failed without justification to perform a material contractual obligation when performance was due.  *See Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*, 80 Cal. App. 4th 1, 10 (2000); 1 Witkin, 10th Contracts § 847 (2005).  However, performance is excused if it is prevented by the act of the opposite party.  *See Taylor v. Sapritch*, 38 Cal. App. 2d 478, 101 P.2d 539, 540 (1940); *see also Ashker v. Sayre*, No. C 05-03759 CW, 2010 WL 476634, at *3 (N.D. Cal. Feb. 4, 2010).

In its motion for summary judgment, defendant RHB argues that no material questions of fact remain as to the elements of its breach of contract counterclaim. (Doc. No. 15-1 at 5–7.) Defendant contends that the March 2015 purchase order constituted a valid and enforceable contract between the parties, and that plaintiff breached this contract by not transporting all of the materials required for the Tioga Pass Road project by August 2015. (Doc. Nos. 15-1 at 5; 15-3 at 6, ¶ 8.)  In support of this argument on summary judgment, defendant offers the following

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

5

1  evidence: (i) a Summary of Quantities Schedule issued by the National Park Service, which sets
2  forth specifications for the Tioga Pass Road project, (Doc. No. 15-3 at 9–12); (ii) the March 2014
3  quotation submitted by plaintiff to defendant, (*Id.* at 14–16); (iii) the March 2015 purchase order,
4  (*Id.* at 18–19); (iv) the affidavit of Barry Vasquez, defendant's current project manager, who
5  states that plaintiff provided defendant between nineteen and twenty four trucks daily, but that the
6  project required forty to fifty trucks daily, (*Id.* at 21); (v) the affidavit of Dean Conard,
7  defendant's superintendent charged with overseeing the handling of all trucking for the project,
8  who states that he typically requested sixty trucks a day from plaintiff and received only twenty
9  one, (*Id.* at 24); (vi) an affidavit from Richard H. Buenting, president of defendant RHB, who
10 explains that plaintiff was only able to haul 35,342.50 tons of the 43,072.01 tons of paving
11 materials it had committed to transport, (*Id.* at 5–7).
12     In its opposition to the pending motion, plaintiff argues that defendant is not entitled to
13 summary judgment on its breach of contract counterclaim because it cannot demonstrate
14 existence of a contract or a breach. (Doc. No. 16 at 2.) First, plaintiff argues that the terms of
15 any agreement between the parties were too indefinite to be enforceable, because the purchase
16 order issued by defendant RHB contained provisions that differed from those in plaintiff's initial
17 quotation which was accepted and signed by the parties. (*Id.* at 3–4, 11–12.) Second, plaintiff
18 argues that defendant cannot demonstrate breach. (*Id.* at 8–9.) In this regard, plaintiff contends
19 that neither its quotation nor the purchase order issued by defendant established deadlines for
20 plaintiff's performance; that defendant did not request more than thirty trucks per day; and that
21 defendant did not complain about unavailability of trucks during the course of plaintiff's
22 performance. (Doc. Nos. 16 at 8–9; 16-2 at 4, ¶ 10.) Alternatively, plaintiff contends that any
23 nonperformance is excused, because defendant prevented plaintiff's performance by directly
24 contracting with plaintiff's subhaulers and making them unavailable to plaintiff for hire. (Doc.
25 No. 16 at 12.) In support of these arguments, plaintiff offers the following evidence on summary
26 judgment: (i) a declaration from Brandon Williams, plaintiff's general manager, who prepared the
27 quotation submitted to defendant, (Doc. No. 16-2); and (ii) plaintiff's truck order and dispatch
28 records, (*Id.* at 8–63).

The court finds plaintiff's arguments persuasive. In moving for summary judgment, defendant has come forward with evidence that plaintiff failed to transport the full quantity of materials required for the Tioga Pass Road project, and that plaintiff transported 35,342.40 tons of construction materials between March and August of 2015 rather than the 42,072.01 tons which was needed. Defendant also has presented evidence that plaintiff provided fewer trucks daily to defendant's work site than the amount requested by defendant's superintendent. However, the terms of the March 2015 purchase order issued by defendant do not specifically require plaintiff to transport the required paving materials within a specific time frame. Rather, the purchase order before the court on summary judgment states that an estimated 50,550 tons of pavement materials will be required for the project,[3] and states generally that "Time is of the essence in Seller's performance of this contract." (Doc. No. 15-3 at 18–19, ¶¶ 6–7.) The purchase order also does not require that a specific number of trucks be made available to defendant on a daily basis.[4] (*Id.*) There is thus a genuine dispute between the parties as to whether plaintiff violated the terms of the purchase order by failing to provide an adequate number of trucks to defendant, or by failing to transport the required materials to the site before August 2015. Defendant's motion for partial summary judgment will therefore be denied.[5]

---

[3] The Buenting affidavit submitted as an exhibit to defendant's summary judgment motion clarifies that the Tioga Pass Road project ultimately required transport of 43,072.01 tons of materials. (Doc. No. 15-3. at 6, ¶ 8.)

[4] In its motion, defendant references a Summary of Quantities Schedule issued by the Department of Interior. (Doc. No. 15-3 at 9–12.) However, this schedule is not referenced in the March 2015 purchase order issued by defendant, and defendant has not come forward on summary judgment with any evidence that the parties intended to incorporate this schedule into any contract they may have entered. *See Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.*, 55 Cal. 4th 1169, 1174 (2013) (typically the terms of a contract alone control its interpretation); *see generally Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1194 (2013) (explaining that a contract can incorporate separate written agreements or specifications by reference only if the reference is clear and unequivocal, the parties give mutual consent, and the terms of the incorporated writing are easily available to the parties). In any event, the Summary of Quantities Schedule also does not appear to establish deadlines for performance.

[5] Having found that defendant has not met its burden on summary judgment to demonstrate breach, the court need not address plaintiff's argument that the purchase order is unenforceable as a contract on grounds of indefiniteness.

CONCLUSION

Based on the reasons set forth above, defendant's motion for partial summary judgment (Doc. No. 15) is denied as to its counterclaim for breach of contract against defendant.

IT IS SO ORDERED.

Dated: __**July 26, 2017**__   _____
UNITED STATES DISTRICT JUDGE